J-A08031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| QUADERE JONES | : | |
| Appellant | : | No. 1168 EDA 2024 |

Appeal from the Judgment of Sentence Entered April 11, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0000465-2023

BEFORE:  LAZARUS, P.J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED APRIL 25, 2025**

Quadere Jones ("Jones") appeals from the denial of his pretrial suppression motion.  We affirm.

Philadelphia police observed Jones driving an unregistered car.  After Jones unsuccessfully attempted to evade the officers, he stopped and fled from the car, discarding the keys in flight.  The police found a gun inside the car.  Jones filed a motion to suppress the gun.

Officer Brendan McCauley ("Officer McCauley"), the only witness at the hearing on Jones's motion to suppress, testified that, at approximately 7:00 p.m. on January 2, 2023, he and his partner, Officer Chris Rycek ("Officer Rycek") (collectively, "the officers"), were in the area of 3200 North American Street, a high crime area where Officer McCauley had made a gun arrest two days earlier.  *See* N.T., 1/5/24, at 10-11.  Jones was driving a Nissan Altima.  The officers ran a computer check and determined the car was unregistered.

*See id*. at 12. Officer McCauley put on his lights and siren and pulled behind Jones, who had pulled over to the side of the road. As the officers attempted to get out of their police cruiser, Jones drove away at high speed, almost striking a SEPTA bus. *See id*. at 12-13. The officers pursued with their lights and siren activated. *See id*. at 16.

After a pursuit, Jones parked the car on the 3300 block of North 3rd Street. Officer Rycek got out of the police cruiser. *See id*. at 13-15. Jones then fled the car and ran until he reached a high fence behind a school where the officers were able to detain him. *See id*. at 15-17. Officer McCauley returned to Jones's unlocked car, opened the door, and saw a firearm under the driver's seat. *See id*. at 17-18. After searching the path of Jones's flight, Officer Rycek found the car keys and returned to Officer McCauley. *See id*. at 18-19. After conferring with a supervisor, Officer McCauley recovered the gun from the car. *See id*. at 19. A computer check established the car was not registered to Jones and its registration had been suspended several months before. *See id*. at 20.

Jones later told the officer he fled because he had an outstanding warrant, but the police found no warrant on their computer system. *See id*. at 21. A computer check disclosed Kassir Brown owned the car and lived at the same address as Jones. *See id*. at 23, 26.[1]

_____

[1] The incident was captured on Officer McCauley's body-worn camera; part of the video was played at the suppression hearing. *See* N.T., 1/5/24, at 22.

At the conclusion of Officer McCauley's testimony, Jones argued the Commonwealth failed to prove he lacked a reasonable expectation of privacy in the car because he parked it legally, and there was no indication he stole it. Counsel also asserted Jones had personal items in the car, and his failure to lock the car did not negate his reasonable expectation of privacy under *Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020). *See* N.T., 1/5/24, at 30-34.

The Commonwealth asserted Jones had no reasonable expectation of privacy because there was no evidence he had permission to drive the car, the Commonwealth proved the car belonged to someone else, and Jones failed to demonstrate a reasonable expectation of privacy in the car. *See id*. at 35-36. It argued, in the alternative, even had Jones met his burden of proof, he abandoned the vehicle, relinquishing any expectation of privacy in the car, by fleeing after the chase and discarding the keys. *See id*. at 37-40.

The court found Officer McCauley had made arrests for serious crimes in the area, the officers determined Jones's car was unregistered and activated the patrol car's lights and siren and pursued Jones as he drove away. *See id*. at 41. Then, after a chase, Jones got out of the car and fled on foot. *See id*. at 41. Jones was apprehended after a fence prevented his escape. *See id*. at 42. As the video Officer McCauley's body-worn camera shows, Officer McCauley examined the car and saw a gun under the driver's seat. *See id*.

The court found the police had a legal basis to stop the unregistered car Jones drove, Jones's flight provided reasonable suspicion to stop him, and Jones abandoned the car when he got out and fled and discarded the car keys in flight. *See id*. at 42-43. The court also found Jones lacked a reasonable expectation of privacy in the abandoned car and the officers were free to search it. The court accordingly denied suppression. *See id*. at 43-44.

Following the denial of suppression, Jones proceeded to a bench trial and was convicted of one count of persons not to possess firearms, 18 Pa.C.S.A. § 6105; he later received a sentence of ten to twenty years of imprisonment. Jones timely appealed and he and the trial court complied with Pa.R.A.P. 1925(b).

On appeal, Jones raises one issue for our review:

Did the [suppression] court err when it found [Jones] had abandoned the vehicle and therefore had no expectation of privacy?

*See* Jones's Brief at 1.

Jones claims the court erred by denying suppression because he had a reasonable expectation of privacy in the car, he did not abandon the car, and the police searched it without a warrant. *See* Jones's Brief at 4-7.

This Court's standard of review regarding a challenge to a suppression ruling is limited to determining whether the suppression court's findings of fact are supported by the record and the legal conclusions drawn from those facts are correct. *See Commonwealth v. Thomas*, 273 A.3d 1190, 1195

(Pa. Super. 2022). Where the Commonwealth has prevailed below, this Court may only consider the evidence of the prosecution and so much of the defense evidence as remains uncontradicted when read in the context of the record. **See id**. It is the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to give their testimony. **See id**. When the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions from those facts. **See Commonwealth v. Williams**, 941 A.2d 14, 27 (Pa. Super. 2008) (*en banc*).

This Court's scope of review is limited to the evidentiary record at the suppression hearing. **See Commonwealth v. Smith**, 302 A.3d 123, 126 (Pa. Super. 2023). When an appellant asserts legal error in a suppression court's ruling, it is the Court's duty to determine if the suppression court properly applied the law to the facts. **See Commonwealth v. Byrd**, 235 A.3d 311, 319 (Pa. 2020) (stating that a suppression court's conclusions and legal rulings are subject to *de novo* review).

To defeat a motion to suppress, the Commonwealth must prove by a preponderance of the evidence the challenged evidence "was not obtained in violation of the defendant's rights." **See Commonwealth v. Wallace**, 42 A.3d 1040, 1047-48 (Pa. Super. 2012) (*en banc*); **see also** Pa.R.Crim.P. 581(H). The Commonwealth bears the initial burden of production to present sufficient evidence the defendant's constitutional rights were not infringed

because, *inter alia*, he lacked a privacy interest in the searched property; when it does so, "it need do no more, absent proof to the contrary from the accused himself." **Commonwealth v. Moore**, 310 A.3d 802, 807 (Pa. Super. 2024), quoting **Commonwealth v. Enimpah**, 106 A.3d 695, 701 (Pa. 2004).

When the burden of proof shifts to a defendant, he must show he had a protected privacy interest society is prepared to recognize as reasonable; if he cannot, police action did not implicate the Federal or State constitutions, and his suppression motion must be denied. **See Enimpah**, 106 A.3d at 698-99; **Moore**, 310 A.3d at 807. A reasonable expectation of privacy is only present when an individual has a subjective expectation of privacy **and** that expectation "is one that society is prepared to recognize as reasonable." **Moore**, 310 A.3d at 807, quoting **Commonwealth v. Brundidge**, 620 A.2d 1115, 1118 (Pa. 1993).

The Fourth Amendment protects the right of the people against unreasonable searches and seizures. **See** U.S. Constit., amend. IV. The ultimate touchstone of the Fourth Amendment is reasonableness. **See Riley v. California**, 573 U.S. 373, 382 (2014). Reasonableness generally requires law enforcement officers to obtain a search warrant before conducting a search. **See id**. Searches without warrants must fall within a specific exception to the warrant requirement. **Id**. (citation omitted).

Abandonment is a specific exception to the warrant requirement; a party may not contest the search and seizure of items he voluntarily abandoned.

*See Commonwealth v. Byrd*, 987 A.2d 786, 790-93 (Pa. Super. 2009);

*Commonwealth v. Clark*, 746 A.2d 1128, 1134 (Pa. Super. 2000).

"[A]bandonment of a privacy interest is primarily a question of intent and may be inferred from words spoken, acts done, and other objective facts." *Commonwealth v. Dowds*, 761 A.2d 1125, 1131 (Pa. 2000) (internal citations and footnote omitted). A person who abandons an item surrenders his reasonable expectation of privacy in it. *See id*. at 1131 n.7.[2]

There can be nothing unlawful in the government's appropriation of abandoned property. *See Abel v. U.S.*, 362 U.S. 217, 241 (1960); *Commonwealth v. Hall*, 305 A.3d 1026, 1033 (Pa. Super. 2023), citing *Byrd*, 987 A.2d at 790-93 (stating a suspect does not retain a reasonable expectation of privacy in items he has voluntarily abandoned); *Commonwealth v. Ibrahim*, 127 A.3d 819, 825 (Pa. Super. 2015) (holding when a person abandons property voluntarily the police may recover it and use it as evidence against him).

Jones asserts he did not voluntarily abandon the car when he parked, locked the doors, took the keys, walked away from the car, and then ran. He

---

[2] *See also Commonwealth v. Shoatz*, 366 A.2d 1216, 1220 (Pa. 1976) (emphasis added) (explaining that the definition of abandonment for Fourth Amendment purposes differs from the strict property-right sense; the abandonment analysis turns not on a property interest in the item but an appellant's possession of a reasonable expectation of privacy in the property in question *at the time of the search*).

asserts he later gave the officers the keys and they used them to conduct a warrantless search of the car in violation of **Alexander**, **supra**. He asserts the facts of the case differ from **Hall**, **supra**, and **Commonwealth v. Lyn**, 316 A.3d 1055 (Pa. 2024), because those cases involve a defendant's flight after a car crash. **See** Jones's Brief at 4-7.

The suppression court found the Commonwealth made an initial showing that defendant lacked a reasonable expectation of privacy in the searched items and the proof burden shifted to the defendant. The court noted a defendant cannot contest the search of property to which he has no reasonable expectation of privacy, and a defendant cannot contest the search of property he has abandoned. **See** Suppression Court Opinion, 7/8/24, at 3. The court concluded Jones abandoned the car, failed to demonstrate a reasonable expectation of privacy in the car, and thus cannot challenge its search. **See id**. at 4-5.

The suppression court properly denied Jones's claim. The Commonwealth showed he has no legitimate privacy interest in the car. The Commonwealth's evidence showed the car was not registered, defendant did not own the car, and defendant did not lock the car before fleeing from it.[3] The Commonwealth therefore met its burden to show Jones had no reasonable

_____

[3] A review of Officer McCauley's testimony and body-worn camera videos contradicts Jones's assertions both that he locked the car and that he later gave the police the keys. **See** N.T. 1/5/24, at 29-30, Commonwealth's Exhibit 1 at 2:00-4:20.

expectation of privacy in the car, and the burden then properly shifted to Jones. *See Enimpah*, 106 A.3d at 701; *Moore*, 310 A.3d at 807.

Jones presented no evidence and failed to establish a reasonable expectation of privacy in the car. His claim fails without the need for further analysis. *See Commonwealth v. Burton*, 973 A.2d 428, 435-36 (Pa. Super. 2009) (*en banc*) (finding where the defendant, subjected to a routine traffic stop, could not establish his connection to the car or the named lessee, his suppression claim failed because "he failed to demonstrate that he had a reasonably cognizable expectation of privacy in a vehicle that he did not own, that was not registered to him, and for which he has not shown authority to operate"); *see also Enimpah*, 106 A.3d at 701; *Moore*, 310 A.3d at 807.[4]

Judgment of sentence affirmed.

---

[4] Consideration of the doctrine of abandonment further supports the denial of suppression. Jones was driving another person's car he did not show he had permission to use and which he abandoned by fleeing from the officers in the car, getting out of the car, running away, and discarding the keys. *See Lyn*, 316 A.3d at 1058 (finding the defendant abandoned a vehicle his girlfriend had given him permission to use when he failed to submit to a traffic stop, crashed, and fled and abandoned the car); *Hall*, 306 A.3d at 1033-34 (finding the defendant abandoned a car by fleeing from police after pulling over and fleeing on foot after an accident).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>4/25/2025</u>